Craighead *v.* Farmers' Building & Loan Association.

Opinion delivered June 1, 1901.

Escrow—Delivery of Note to Maker.—Where a surety signed a note and handed it to the maker, under an agreement that it should not be delivered until another should sign as surety, the fact that the maker delivered the note without the additional signature is not a defense to the surety as against a *bona fide* purchaser for value.

Appeal from Garland Circuit Court.

Alexander M. Duffie, Judge.

*Wood & Henderson,* for appellant.

The court erred in holding that appellee was an innocent holder of the note.   The possession of the note by the maker, after indorsement by payee, raised the presumption of satisfaction.   47 Ark. 394.   Appellee did not receive the paper in the usual course of business, and so took it subject to equities.   Tied. Comm. Pap.

§ 294; 29 Mich. 355; 69 Me. 212; 11 N. Y. Sup. Ct. (4 Hun), 524; 50 N. Y. 158; 13 Ark. 160. The giving of a note by a debtor only operates as a conditional payment, unless the parties expressly or impliedly agree to consider it absolute payment. 32 Ark. 740; 45 Ark. 313; 46 Ark. 552; 48 Ark. 271; Story, Prom. Notes, § 104; 2 Dan. Neg. Inst. § 1260, *et seq.;* 2 Rand. Comm. Pap. § 750; 2 Am. Lead. Cas. 263; 1 Salk. 124.

*J. D. Kimbell,* for appellee.

Proof of payment rested on the maker, and will not be presumed. 49 Ark. 508. If the alleged fraud was really perpetrated, the indorser, by placing it in the power of the maker to negotiate the note, is estopped to deny liability. 48 Ark. 454.

BUNN, C. J. This is a suit on a promissory note, of which the following is a copy, to-wit:

"$375. Hot Springs, Ark., December 29, 1896. Ninety days after date I promise to pay to the order of T. J. Craighead, three hundred and seventy-five dollars ($375) at the Arkansas National Bank of Hot Springs, Arkansas, for value received, with interest from maturity at the rate of ten per cent. per annum until paid. [Signed] Charles R. Cogswell." Across the face of this note was this indorsement: "Protested for nonpayment, this the 1st April, 1897. [Signed] Fred N. Rix, Notary Public." Further indorsed as follows: "T. J. Craighead, F. G. Rice."

This suit was tried on the complaint and answers of defendant in the Garland county common pleas court, resulting in judgment for the amount claimed in the complaint, and, reserving all proper exceptions, the defendants appealed to the circuit court of said county. In the circuit court, the defendant, T. J. Craighead, filed his amended answer, which is in words and figures, to-wit: "The defendant, T. J. Craighead, for his amendment to his original answer herein, says that he indorsed the note sued on herein with the distinct understanding and agreement at the time with the said C. R. Cogswell, the maker thereof, that, before the same should become in full force and effect, he, the said maker, was to get one P. J. Deloney to indorse or sign said note as surety thereto; that said Deloney never signed said note, and the same became thereby void, and the plaintiff is not an innocent holder or owner of said note; that it did not obtain the same through the due course of trade, and is not an innocent holder thereof, and it obtained the said note with notice of defendant's equities against

the same; that he is not indebted to the plaintiff in any sum whatever; that said note is void, and he is not liable to plaintiff in any sum thereon whatever."

This amended answer to the complaint raises the only substantial issue in the case.

The evidence shows that Cogswell had been the local agent of plaintiff company at Hot Springs, and had got behind in his accounts with the company. Thereupon the company sent its other agent from Nashville, Tenn., McWherter by name, to adjust the matter. McWherter talked the matter over with Cogswell, and proposed to give him further time to pay the amount of the shortage, which they had found to be $375, if the latter would make a good note, indorsed by good men, which Cogswell said he thought he could do, naming Deloney as a man he thought would aid him by indorsing for him. This was the occasion of a conference between McWherter and Deloney, and, as we infer, with the knowledge of Cogswell. Deloney had McWherter to explain the nature of the trouble Cogswell had got into, and the amount of the shortage, and the character of the note he was asked to indorse. He finally refused to indorse the note for Cogswell as requested, and the result of this conference was communicated to Cogswell by McWherter, and two or three days after Cogswell informed McWherter that he thought Craighead would indorse the required note for him. McWherter desired the first indorser to be named in the note as payee for convenience of negotiation, and wrote out a note payable to Craighead, who was to indorse the same also; and in this form it was taken by Cogswell to Craighead, and he was asked by Cogswell to indorse it in that shape, which he at first refused to do, but ultimately indorsed it, and gave it to Cogswell to not deliver it until Deloney would also indorse it. Cogswell, without presenting the note to Deloney, carried it back to McWherter, who requested him to procure another name to make the note safe, doubtless having in view of the rules pertaining among brokers; and Cogswell then induced Rice to indorse it. and in this shape the note was accepted by McWherter. Although no express words to that effect were used at the time, yet all the circumstances connected with the transaction carry no other meaning than that the note was accepted in satisfaction of the demand against Cogswell.

In the case of *Tabor* v. *Merchants' National Bank*, 48 Ark. 454, referred to in the opinion and judgment of the trial court in

this case, this court said (quoting from the syllubus) : "A surety who signs a note with an agreement that the maker is not to deliver it to the payee until it is signed by other sureties cannot plead against an innocent payee, without notice of the agreement, the fraud of the maker in delivering it without the additional sureties. He is regarded as having constituted the maker as his agent to negotiate the note, and, having clothed him with the means of perpetrating the fraud, he must bear the loss."

But, in order to meet the force of this ruling, defendants in the case at bar contend that from the very nature of the transaction, as appears from the face of the note as delivered to Mc-Wherter, the plaintiff was not an innocent holder of it, since it is merely an accommodation paper; and that plaintiff was affected with notice for that reason, or was in that way put on inquiry, which, if reasonably followed up, would have led to a knowledge of the understanding between Craighead and Cogswell. They also contend that a similar legal result follows from the fact that the maker of the note held possession of the same between the time it was signed and indorsed by Cogswell and Craighead and the delivery of the same to McWherter and the acceptance by him. The note was not finally executed until delivered to and accepted by McWherter. Until then it was in the possession of Cogswell as the agent of Craighead and Rice, so far as this particular point is concerned. Nor is it possible to see why it should be said that McWherter should be held to make inquiry as to the *bona fides* of a transaction which had been consummated in exact conformity to his directions by the parties to it, so far as he knew. It is not contended that he had any knowledge of the secret understanding between Craighead and Cogswell as to the indorsement and delivery of the note; nor is it claimed that there was any circumstance putting him on notice, except the face of the paper. The object of all parties was to obtain an extension of time to settle his shortage, and to do so it was necessary to execute and deliver to plaintiff's agent, McWherter, the note in settlement of the indebtedness. This was done by Craighead and Rice, the neighbors and friends of Cogswell, and in a manner which could neither raise suspicion, nor suggest inquiry on the part of McWherter, a stranger, that any secret transaction would be relied on to defeat the object in view. Had there been anything to put him on his notice, he doubtless would have declined to have anything to do with it—not even to the extent of inquiry. Craighead relied upon Cogswell to carry

out the understanding between them, and, he having failed to do so, Craighead must suffer the consequences.

We deem it unnecessary to discuss the other questions raised, as we see no reversible error in relation to any of them.

The judgment is affirmed.